

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 20cr922 |
| v. | Violations: Title 18, United States Code, Sections 1014, 1343, 1957 |
| CARLOS SMITH | **UNDER SEAL** |

**COUNT ONE**

Judge Manish S. Shah
Magistrate Judge Sheila M. Finnegan

The SPECIAL JANUARY 2020 GRAND JURY charges:

1.    At times material to this indictment:

a.    Bank A was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

b.    U.S. Small Business Administration ("SBA") was a United States government agency that provided support to small businesses.

c.    CLS Financial Services, Inc. was a for-profit corporation incorporated in Indiana in 2014.

d.    CARLOS SMITH was the CEO and owner of CLS Financial Services, Inc. SMITH resided in Park Forest, Illinois.

e.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

f.    One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job

retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

g.     In order to obtain a PPP loan, a business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative was required to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. In addition, the authorized representative was required to answer questions relating to the representative's criminal history. Applicants were also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations.

h.     PPP loan proceeds were required to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the Small Business Administration ("SBA") if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

i.      To gain access to funds through the PPP, small businesses applied through financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

j.      Participating financial institutions required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the business's operating expenses, the business's employees, how the PPP loan would be used, and the applicant's criminal history, which information was material to lenders' approval, terms, and funding of loans.

k.      Another source of relief provided by the CARES Act was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities for loans up to $150,000. The EIDL Program was designed to provide economic relief to small businesses that are experiencing a temporary loss of revenue.

l.      To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information concerning the business and the business owner, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants were required to electronically certify that the information provided was accurate and

were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

        m.      EIDL funds were issued to the small business applicants directly from the United States Treasury.

        n.      EIDL Advance was a grant program offered together with the EIDL program. The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000.

        o.      EIDL loan proceeds were permitted to be used to pay an array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.

        2.      Beginning in or around June 2020, and continuing until in or around October 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS SMITH,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from government relief programs by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

        3.      It was part of the scheme that defendant SMITH submitted applications for loans under the PPP and EIDL programs seeking hundreds of thousands of dollars for CLS Financial Services, Inc., that contained false statements, misrepresentations,

and omissions related to CLS Financial Services, Inc. and SMITH's prior criminal record.

### The PPP Loan

4.     It was part of the scheme that, on or about July 27, 2020, SMITH, in his capacity as authorized representative of CLS Financial Services, Inc., applied for a PPP loan in the amount of $270,000 from Bank A.

5.     It was further part of the scheme that, in order to obtain a PPP loan from Bank A, SMITH represented to Bank A on the PPP loan application that the PPP loan was "necessary to support the ongoing operations of the business." SMITH knew at the time that CLS Financial Services, Inc. had no "ongoing operations."

6.     It was further part of the scheme that, in order to obtain a PPP loan from Bank A, SMITH represented on the loan application that the PPP loan "would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." SMITH knew at the time that CLS Financial Services, Inc. had no employees or payroll, and that CLS Financial Services, Inc. would not use the PPP funds for these expenses.

7.     It was further part of the scheme that, in order to obtain a PPP loan from Bank A, SMITH fraudulently represented on the loan application that CLS Financial Services, Inc. had 61 employees and an average monthly payroll of $108,000, to make it falsely appear that CLS Financial Services, Inc. had payroll expenses. SMITH knew at the time that CLS Financial Services, Inc. had no employees or payroll.

8.     It was further part of the scheme that, in order to obtain a PPP loan from Bank A, SMITH attached falsified tax forms, to make it falsely appear that CLS Financial Services, Inc. had paid employee wages and had withheld federal income taxes from the employees' wages in 2019 and 2020.  SMITH knew at the time that CLS Financial Services, Inc. had no employees or payroll, and knew that the attached tax forms were falsified.

9.     It was further part of the scheme that, in order to obtain a PPP loan from Bank A, SMITH fraudulently represented that, within the last 5 years, SMITH had not been convicted of or pleaded guilty to a felony. SMITH knew at the time that he had been convicted of a felony within the last 5 years.

10.     It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, SMITH caused Bank A to disburse a PPP loan of $270,000 on or about September 23, 2020 into a bank account that defendant maintained at Bank A in the name of CLS Financial Services, Inc., and of which defendant was the only signatory. SMITH knew at the time that neither he nor CLS Financial Services, Inc. was entitled to the PPP loan funds.

### The EIDL

11.     It was further part of the scheme that, on or about April 2, 2020, SMITH, in his capacity as authorized representative of CLS Financial Services, Inc., applied for an EIDL from the SBA.

12.     It was further part of the scheme that, in order to obtain an EIDL from the SBA, SMITH fraudulently represented that, for the 12 months prior to the

disaster, CLS Financial Services, Inc. had gross revenue of $1,826,000 and cost of goods of $860,000, to make it falsely appear that CLS Financial Services, Inc. had such revenue and cost of goods during that time period.

13.     It was further part of the scheme that in order to obtain an EIDL from the SBA, SMITH fraudulently represented on the loan application that CLS Financial Services, Inc. had 2 employees. SMITH knew at the time that CLS Financial Services, Inc. had no employees.

14.     It was further part of the scheme that, through the submission of the false and fraudulent EIDL application, SMITH caused the SBA to disburse an EIDL of $149,900 on or about June 8, 2020, into a bank account that defendant maintained at Bank B in the name of CLS Financial Services, Inc., and of which defendant was the only signatory. SMITH knew at the time that neither he nor CLS Financial Services, Inc. was entitled to the EIDL funds.

15.     It was further part of the scheme that, through the submission of the false and fraudulent EIDL application, SMITH caused the SBA to disburse an EIDL advance of $2,000 on June 12, 2020, into a bank account that defendant maintained at Bank B in the name of CLS Financial Services, Inc., and of which defendant was the only signatory. SMITH knew at the time that neither he nor CLS Financial Services, Inc. was entitled to the EIDL advance funds.

16.     It was further part of the scheme that SMITH misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden, certain

material facts, including the acts and purposes of the acts done in furtherance of the scheme.

17.     On or about July 27, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS SMITH,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely an internet transmission of a PPP loan application for CLS Financial Services, Inc., processed through Bank A servers located outside of Illinois, and received by Bank A;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1-16 of Count One are realleged and incorporated here.

2. On or about June 8, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS SMITH,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely, an interstate wire transmission of approximately $149,900 from the SBA Finance Center, located in Colorado, to the CLS Financial Services Inc. account at Bank B, which funds represented the proceeds of an Economic Injury Disaster Loan to CLS Financial Services, Inc.;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraph 1 of Count One is realleged and incorporated here.

2.     On or about July 27, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

### CARLOS SMITH,

defendant herein, knowingly caused false statements to be made to Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent to influence the actions of Bank A concerning a Paycheck Protection Program loan application, in that defendant stated:

(a)     CLS Financial Services, Inc. had 61 employees and an average monthly payroll of $108,000;

(b)     CLS Financial Services, Inc. was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

(c)     The PPP loan was necessary to support the "ongoing operations" of CLS Financial Services, Inc.; and

(d)     Within the last 5 years, defendant had not been convicted of or pleaded guilty to any felony;

when defendant knew that such statements were false;

In violation of Title 18, United States Code, Section 1014.

## COUNT FOUR

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1-16 of Count One are realleged and incorporated here.

2.      On or about October 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS SMITH,

defendant herein, knowingly engaged in a monetary transaction, namely, the deposit of check number 5009 into an account at Credit Union A, drawn from Bank B and made payable to Carlos Smith, in the amount of $30,000, which was in and affecting commerce and involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343, as charged in Count Two;

In violation of Title 18, United States Code, Section 1957.

## **<u>FORFEITURE ALLEGATION</u>**

The SPECIAL JANUARY 2020 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Sections 1014 and 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property that constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as set forth in this Indictment, defendant shall forfeit to the United States of America, any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

3.      The property to be forfeited includes, but is not limited to:

a.      A personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Sections 1014 and 1343, estimated to be approximately $421,900; and

b.      A personal money judgment in an amount equal to the funds involved in the violation of Title 18, United States Code, Section 1957, estimated to be approximately $30,000.

4.    If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

Signed by Matthew Madden on behalf of the
UNITED STATES ATTORNEY