FILED
JUNE 22, 2022
Honorable Manish S. Shah
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 922 |
| v. | |
| CARLOS SMITH | Judge Manish S. Shah |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant CARLOS SMITH, and his attorney, DENA M. SINGER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-2), making a false statement to a financial institution, in violation of Title 18, United States Code, Section 1014 (Count 3), and money laundering, in violation of Title 18, United States Code, Section 1957 (Count 4).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charges to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count Four, which charges defendant with money laundering, in violation of Title 18, United States Code, Section 1957.

## **Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Four of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count One of the indictment:

Beginning in or around June 2020, and continuing until in or around October 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant CARLOS SMITH knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from government relief programs by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.

More specifically, CARLOS SMITH engaged in a scheme to fraudulently submit applications for hundreds of thousands of dollars in loans under government

programs that were established under the Coronavirus Aid, Relief, and Economic Security Act in order to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. SMITH submitted loan applications for funds under the Paycheck Protection Program and the Economic Injury Disaster Loan Program for his company, CLS Financial Services, Inc., that contained false statements and misrepresentations, and concealed material facts related to CLS Financial Services, Inc., and SMITH's prior criminal record. Based on the false statements, misrepresentations, and concealed material facts in the applications, SMITH caused Bank A and the Small Business Administration (SBA) to issue hundreds of thousands of dollars in loans to CLS Financial Services, Inc.

## The Economic Impact Disaster Loan (EIDL)

To further the scheme to defraud, on or about April 2, 2020, SMITH applied for an EIDL from the SBA. SMITH represented himself as the CEO and 100% owner of CLS Financial Services, Inc. SMITH made several misrepresentations on the EIDL loan application, including that, for the 12 months prior to the disaster, CLS Financial Services, Inc. had two employees, gross revenue of $1,826,000, and cost of goods of $860,000, to make it falsely appear that CLS Financial Services, Inc. had employees, revenue, and cost of goods during that time period. SMITH knew at the time that CLS Financial Services, Inc. had no employees, revenue, or cost of goods in

3

the 12 months prior to the disaster. SMITH also requested an EIDL Advance in this application, which was calculated based on the applicant's number of employees.

After SMITH learned that the EIDL loan to CLS Financial Services, Inc. had been approved on June 1, 2020, SMITH opened a business checking account at Bank B in order to receive the EIDL funds. SMITH was the only signatory on the account.

On June 8, 2020, SMITH caused the SBA to disburse an EIDL of $149,900 into the business account he opened and controlled at Bank B. On June 12, 2020, SMITH caused the SBA to disburse an EIDL Advance of $2,000 into the business account he opened and controlled at Bank B. SMITH knew at the time that neither he nor CLS Financial Services, Inc. was entitled to the EIDL funds or the EIDL Advance funds.

## The Paycheck Protection Program (PPP) Loan

To further the scheme to defraud, on or about July 27, 2020, SMITH, in his capacity as authorized representative of CLS Financial Services, Inc., applied for a PPP loan in the amount of $270,000 from Bank A. SMITH represented himself as the CEO and 100% owner of CLS Financial Services, Inc. SMITH made several misrepresentations on the PPP loan application to Bank A, including that the PPP loan was necessary to support the ongoing operations of the business; the PPP loan would be used to retain workers and maintain payroll; and CLS Financial Services, Inc. had 61 employees and an average monthly payroll of $108,000. SMITH knew that CLS Financial Services, Inc. had no ongoing operations, employees, or payroll, and that CLS Financial Services, Inc. would not use the PPP funds for these expenses.

SMITH further fraudulently represented on the PPP loan application that, within the last five years, SMITH had not been convicted of a felony, pleaded guilty to a felony, or been placed on any form of parole or probation. SMITH knew at that time that he had pleaded guilty to two felony offenses in October 2016; he was sentenced to a term of imprisonment as a result of those convictions in January 2017; and he was on supervised release for that felony offense at the time he submitted the PPP loan application in July 2020.

Additionally, SMITH falsified tax forms and attached them to the PPP loan application to make it falsely appear that CLS Financial Services, Inc. had paid employee wages and withheld federal income taxes from the employees' wages in 2019 and 2020. Several of the tax forms purported to be manually signed by a representative of Company A, an Electronic Return Originator. SMITH falsified the Company A representative signatures. SMITH knew at the time that CLS Financial Services, Inc. had no employees or payroll in 2019 or 2020, and that the attached tax forms were falsified.

As charged in Count One, in order to execute his wire fraud scheme, on or about July 27, 2020, SMITH transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely an internet transmission of the PPP loan application for CLS Financial Services, Inc. to Bank A. SMITH was located in Illinois at the time he transmitted the PPP loan application to Bank A. SMITH acknowledges that when he transmitted the PPP loan application,

it was processed through Bank A servers located outside of Illinois, causing an interstate wire transmission.

On September 23, 2020, SMITH caused Bank A to disburse a PPP loan of $270,000 into a bank account that SMITH maintained at Bank A in the name of CLS Financial Services, Inc., and of which SMITH was the only signatory. SMITH knew at the time that neither he nor CLS Financial Services, Inc. was entitled to the PPP loan funds.

   b.   With respect to Count Four of the indictment:

On or about October 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, SMITH knowingly engaged in a monetary transaction, namely, the deposit of check number 5009 into an account at Credit Union A, drawn from Bank B and made payable to Carlos Smith, in the amount of $30,000, which was in and affecting commerce and involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

More specifically, on or about April 2, 2020, SMITH, in his capacity as authorized representative of CLS Financial Services, Inc., applied for an Economic Impact Disaster Loan from the SBA. On that application, SMITH knowingly made fraudulent misrepresentations, including misrepresentations about CLS Financial Services Inc.'s gross revenue, cost of goods, and employees. Based on the

misrepresentations in the application, on or about June 8, 2020, SMITH caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely, an interstate wire transmission of approximately $149,900 from the SBA Finance Center, located in Colorado, to the CLS Financial Services Inc. account at Bank B, which funds represented the proceeds of an Economic Injury Disaster Loan to CLS Financial Services, Inc.

On or about October 6, 2020, SMITH caused check number 5009, made payable to Carlos Smith in the amount of $30,000, to be drafted from his CLS Financial Services Inc. account at Bank B. SMITH was the sole signatory on the Bank B account and SMITH signed check number 5009. Also on October 6, 2020, SMITH electronically deposited check number 5009 into a checking account at Credit Union A in the name of Carlos Smith. SMITH was the sole signatory on the Credit Union A account. SMITH knew that the $30,000 that he drew from Bank B in check number 5009 and deposited into Credit Union A was from the Economic Injury Disaster Loan he had fraudulently obtained on behalf of CLS Financial Services, Inc.

## **Maximum Statutory Penalties**

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further

understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b. Count Four carries a maximum sentence of 10 years' imprisonment. Count Four also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Four, the judge also may impose a term of supervised release of not more than three years.

c. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 30 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations**.

**Count One**

    i.  The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

    ii.  Pursuant to Guideline § 2B1.1(b)(1)(G), the offense level is increased by 12 because the loss was approximately $421,900, which is more than $250,000 but less than $550,000.

### Count Four

    iii.  The base offense level is 19, pursuant to Guideline § 2S1.1(a)(1).

    iv.  Pursuant to Guideline § 2S1.1(b)(2)(A), the offense level is increased by 1 because the defendant is pleading guilty to, and will be convicted of, an offense under Title 18, United States Code, Section 1957.

### Grouping

    v.  Counts 1 and 4 are grouped pursuant to Guideline § 3D1.2(d). The offense level for the group is 20.

### Acceptance of Responsibility

    vi.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       vii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

       c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

       i.     On or about May 5, 2008, defendant was sentenced to two years' probation as a result of his conviction for committing a deceptive practice in the Circuit Court of Cook County, Illinois. Pursuant to Guideline § 4A1.2(e), defendant receives zero criminal history points for this offense.

       ii.     On or about January 4, 2009, defendant was sentenced to one year and six months' probation as a result of his conviction for driving under the influence of alcohol in the Circuit Court of Cook County, Illinois. Pursuant to Guideline § 4A1.2(e), defendant receives zero criminal history points for this offense.

11

iii.　　On or about January 19, 2017, defendant was sentenced to 60 months' imprisonment as a result of his convictions for theft of government funds and aggravated identity theft in the United States District Court for the Northern District of Illinois, case number 15 CR 211. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this offense.

iv.　　Pursuant to Guideline § 4A1.1(d), defendant receives an additional two criminal history points for committing the instant offense while on supervised release for the conviction described in subsection (c)(iii) above.

d.　　**Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 17 which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.　　Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing,

12

and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the U.S. Small Business Administration is $151,900, and the total amount of restitution owed to Bank A is $270,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment and the forfeiture allegation.

14

**Forfeiture**

18.     Defendant acknowledges that administrative forfeiture proceedings were commenced against certain property, including seized funds from CLS Financial Services, Inc.'s account at Bank A in the amount of approximately $268,937.66. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, thereby extinguishing any claim he may have had in the seized property.

19.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 922.

15

21.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

16

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

17

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

20

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _6/15/2022_

/s/ John R. Lausch, Jr., by TCM
JOHN R. LAUSCH, JR.
United States Attorney

CARLOS SMITH
Defendant

Z. HEIDI MANSCHRECK
MEGAN DONOHUE
Assistant U.S. Attorneys

DENA M. SINGER
Attorney for Defendant

21