UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 922 |
| v. | |
| CARLOS SMITH | Judge Manish S. Shah |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits its position paper as to sentencing factors, and asks this Court to impose a sentence of at least 60 months' imprisonment, along with a period of three years' supervised release and restitution to the victims.

**I.    BACKGROUND**

Shortly after being released to home confinement as part of his 60-month prison term for a prior fraud, defendant Carlos Smith decided it was time to commit fraud again. He chose as his first victim a government program run by the U.S. Small Business Administration that was designed to provide relief to struggling businesses impacted by the Covid-19 pandemic. He submitted his first fraudulent application, for an Economic Injury Disaster Loan ("EIDL") in April 2020, about a month before he began his term of supervised release.

When the funds from that fraudulent loan eventually landed in an account he controlled, he used the funds for his lifestyle and for people close to him. Emboldened by his success, he then fraudulently sought and obtained a second CARES Act loan,

this time through the Paycheck Protection Program ("PPP"). In both applications, Smith lied about the condition and performance of his purported business, CLS Financial Services, Inc., which did not operate during the year prior to the pandemic, when defendant was incarcerated. In the PPP application he also lied about his criminal history and submitted fake tax documents. Smith received a total of approximately $421,900 for the two loans.

Each loan was disbursed into a different bank account controlled by Smith. When Smith learned that the account with the PPP funds was under review by the bank, he quickly moved money out of the account holding the remainder of the EIDL funds—including cutting a $30,000 check to himself and depositing it into a separate account—to protect and retain the proceeds of his fraud. Fortunately, law enforcement was able to seize and recover the remaining PPP funds, which were frozen. In total, over the course of approximately five months, Smith cashed and/or spent approximately $152,962 of the fraudulently obtained funds.[1]

Because of his scheme, his false statements, and his money laundering, defendant was charged by indictment with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One and Two), making a false statement to a financial institution, in violation of Title 18, United States Code, Section 1014 (Count Three), and money laundering, in violation of Title 18, United States Code, Section

---

[1] Further details of the defendant's scheme are set forth in the Government's Version of the Offense, which is appended to the PSR.

1957 (Count Four). Pursuant to a plea agreement, on June 22, 2022, he pleaded guilty to Count One and Count Four of the indictment. Doc. 44.

## II.     GUIDELINES CALCULATIONS

The government agrees with the offense level and criminal history calculations in the PSR submitted by the United States Probation Office. With a total offense level of 17 and a criminal history category of III, the resulting advisory Guidelines range is 30 to 37 months' imprisonment. PSR ¶ 116.

## III.    SENTENCING FACTORS AND GOVERNMENT'S RECOMMENDATION

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing, *Gall v. United States*, 552 U.S. 38, 49–50 (2007), and must be considered along with all of the factors set forth in Title 18, United States Code, Section 3553(a). Considering these factors, the government recommends a sentence of at least 60 months' imprisonment, which is substantially above the Guidelines range; a three-year term of supervised release; and an order of restitution. The government's sentencing recommendation is driven primarily by the defendant's commission of a new fraud scheme so quickly after his prior 60-month prison term, as well as his brazen exploitation of relief fund programs during a once-in-a-lifetime pandemic. Given these extraordinarily aggravating circumstances, such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of defendant's offense conduct and criminal history, promote respect for the law, provide just punishment, and afford adequate deterrence.

A.      **The Nature and Circumstances of the Offense**

1. <u>The Exploitation of Pandemic Relief Funds</u>

Smith took advantage of CARES Act loan programs, which were intended to provide relief to struggling businesses at the beginning of the Covid-19 pandemic. Instead of allowing a business experiencing a downturn to meet its expenses and payroll, Smith used the funds to support his own lifestyle. After the success of his fraudulent EIDL application, Smith did not stop. He followed it up with the PPP loan, for which he was willing to concoct more lies. In addition to his lies about his purported business's operations, he lied about his lack of criminal convictions or imprisonment during the prior five years, and he submitted phony tax documents to support the existence of his bogus "employees."

When the bank froze the account holding the PPP funds, Smith went on an approximately two-week spree to protect his illicit proceeds from the EIDL. During the first two weeks of October 2020, he quickly transferred money, wrote checks, and spent the remainder of the EIDL funds. Had the bank not frozen the PPP funds, he likely would have spent and transferred the remainder of that money as well.

2. <u>Commission of the Offense While in BOP Custody and on Supervised Release.</u>

Defendant's crime began while he was in BOP custody and continued during his term of supervised release as part of his sentence for an earlier tax-refund fraud in *United States v. Carlos Smith*, No. 15 CR 211 (N.D. Ill. 2015) (Alonso, J.). The conduct underlying that case, which is detailed in the Government's Version of the Offense, involved the same purported business used in this scheme, CLS Financial

4

Services. In his earlier scheme, the company purported to offer tax preparation services, and Smith used it to obtain personal identifying information for taxpayers. Smith then filed false federal income tax returns, set up bank accounts in the taxpayers' names, and collected their refunds for himself.

In January 2017, Judge Alonso sentenced Smith to a total of 60 months' imprisonment, along with two years' supervised release, following his convictions for theft of government funds and aggravated identity theft. After serving the majority of the 60-month term in prison, on November 14, 2019, Smith was transferred into a halfway house. Two months later, on January 13, 2020, he was placed on home confinement. By April 2020, Smith had submitted his first fraudulent loan application, for an EIDL.

Smith was officially released from BOP custody on May 11, 2020, and began serving his two-year term of supervised release. The funds from his fraudulent EIDL application were disbursed shortly thereafter, in June 2020. Smith then submitted his fraudulent PPP application in late July 2020, and the funds for the PPP loan were disbursed in September 2020—within approximately six months of the commencement of his term of supervised release.

Approximately one month after the indictment was returned in this case, a special report noting his non-compliance was filed in 15 CR 211 (Dkt. # 95). PSR ¶ 48. However, no summons was issued, and Smiths' term of supervised release expired on May 10, 2022. PSR ¶ 50. Based on his commission of the offense conduct to which he has admitted (a Grade B violation), and with a Criminal History Category of II at the

time of his original sentencing in 15 CR 211, he would have faced a Guidelines range of at least 6 to 12 months' imprisonment. U.S.S.G. § 7B1.4(a).[2]

### B. The History and Characteristics of the Defendant

The defendant is 58 years old. He has committed some form of fraud multiple times over the past 23 years. His first criminal conviction, which stemmed from his attempt to pass a forged check, was at the age of 35. PSR ¶ 45. He followed that up at age 43, when he again tried to pass multiple fraudulent checks. PSR ¶ 46. For both crimes, he received sentences of probation. *Id.* ¶¶ 45-46. By 50, Smith had committed his most serious offense—the federal tax refund fraud involving the use of multiple taxpayers' identities without their consent—and received a 60-month term of imprisonment. PSR ¶ 48. Remarkably, this pattern of fraud began when defendant was well into his adulthood, and it has now continued even after facing serious consequences.

There is nothing in defendant's history that softens or explains his conduct. Unlike many defendants who come before this Court, the defendant had a self-reported "good childhood," with strong family relationships, financial stability, and no reported abuse or neglect. PSR ¶¶ 61-62. He did well in school and served his country in the United States Air Force. PSR ¶¶ 64-65. Nothing about defendant's background suggests that he resorted to crime out of financial desperation, addiction, lack of access to mental health care or therapy, or any reason other than opportunistic

---

[2] The Guidelines range could have been even greater if he was found to have violated Title 18, United States Code, Section 1014 (with which he was charged but did not plead guilty), a Grade A felony under the Guidelines. U.S.S.G. § 7B1.1(a)(1)(B). The Guidelines term for such a violation is 15 to 21 months' imprisonment. *Id.* § 7B1.4(a).

greed. *Cf. United States v. Anderson*, 517 F.3d 953, 966 (7th Cir. 2008) ("[w]hile many criminals commit crimes from lack of opportunity and desperation, [defendant] acted out of greed").

Defendant does have various reported health issues, and, due to his age, prison likely will be harder for him. PSR ¶¶ 74-80. However, none of his reported conditions are beyond the capacity of the Bureau of Prisons to manage—as they did, for most if not all of them, when defendant was previously incarcerated.

### C. The Need for Just Punishment, to Promote Respect for the Law, and to Afford Adequate Deterrence

The defendant's swift and brazen recidivism following his prior 60-month prison term warrants a substantial term of imprisonment. And, in addition to specifically deterring the defendant, it is imperative that a strong message of deterrence is received by other would-be offenders who seek to unlawfully profit from the Covid-19 pandemic. The government submits that the Guidelines range does not adequately account for these aggravating factors, and that a term of imprisonment of at least the length of his prior sentence is necessary to advance the goals of sentencing, including promoting respect for the law.

As this case illustrates, the Covid-19 pandemic was (and still is) a lucrative opportunity for crooks. Both public and private actors have had to devote substantial, unprecedented resources to address the pandemic's many effects on our lives. With such resources on the table, there will always be individuals, like defendant, who see an opportunity for unearned lucre. What is so remarkable about the defendant is that he saw that opportunity and exploited it *while he was still in BOP custody*. Those

circumstances make plain the need to specifically deter him from further crimes. But the sentence also must afford adequate general deterrence to other would-be criminals. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); *see also United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) ("endors[ing] the idea that white-collar criminals act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity. They are, therefore, prime candidates for general deterrence") (internal quotation marks and citation omitted).

Here, a sentence of at least 60 months' imprisonment is sufficient, but not greater than necessary, to accomplish these goals. Such a sentence would account for defendant's recent, similar criminal history; his commission of the offense while in custody and then on supervised release (for which he suffered no consequence in the earlier case); and the defendant's extraordinary exploitation of government programs providing relief funds during an unprecedented global pandemic. These are all unusually aggravating factors that the Guidelines simply do not account for, and they all point to the need for a sentence substantially above the Guidelines range.

### D. Supervised Release

In addition to the term of imprisonment, the government recommends a three-year period of supervised release. A substantial period of supervised release will be an important component of the defendant's sentence, particularly in light of

defendant's prior conduct while on supervised release. The purposes of a term of supervised release include "rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism." *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015). In addition to advancing these goals, the conditions should be specific and appropriately tailored to the defendant. *Id.* at 839; *United States v. Strobel*, 987 F.3d 743, 748 (7th Cir. 2021). For the reasons below, the conditions recommended by the Probation Office meet these goals for this defendant.

The government agrees with the four mandatory conditions of supervised release set forth by the Probation Office. PSR ¶ 120. The government also agrees with the discretionary and special conditions they recommend, which are (1) necessary to facilitate supervision by the Probation Office; (2) necessary to ensure he meets the financial obligations imposed in the judgment, including providing restitution to victims; (3) necessary to promote his respect for the law, deter him from committing future crimes, and to protect the public from further crimes by him; (4) necessary in light of his history of alcohol abuse; and (5) necessary to facilitate his reintegration as a law-abiding member of society.

The government recommends an addition to one of the proposed conditions: discretionary condition #5, which the government proposes should additionally restrict defendant's occupation, business, or profession as follows: "You shall not conduct any business under CLS Financial Services, Inc., and you shall not open or access bank accounts held in the name of any entity." The government agrees that the restriction in the first clause is necessary in light of the defendant's repeated use

9

of an entity (CLS Financial Services, Inc.) as part of this scheme and his prior crimes. The restriction in the second clause further assures that he will not simply use the bank accounts of a different entity to perpetrate a similar crime. Both restrictions bear a "reasonably direct relationship" to the offending conduct and will protect the public from further crimes by the defendant.

### E. Restitution

Pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims in the total amount of $421,900. As noted in the plea agreement, the government will recommend that any of the funds that were administratively forfeited be applied toward the restitution judgment.

## IV. CONCLUSION

For the reasons stated here, the government respectfully requests that this Court impose a sentence of at least 60 months' imprisonment, a period of three years' supervised release, and restitution to the victims.

> Respectfully submitted,
>
> JOHN R. LAUSCH, JR.
> UNITED STATES ATTORNEY
>
> By: /s/ *L. Heidi Manschreck*
> L. HEIDI MANSCHRECK
> Assistant United States Attorney
> United States Attorney's Office
> 219 South Dearborn, 5th Floor
> Chicago, Illinois 60604
> (312) 469-6205
> heidi.manschreck2@usdoj.gov

Dated: January 5, 2023